# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ERNEST NADAB** : | |
| *Plaintiff* : | |
| : | |
| v. : | **CIVIL ACTION NO. 20-CV-3537** |
| : | |
| **JOHN WETZEL,** *et al.*, : | |
| *Defendants* : | |

# M E M O R A N D U M

**QUIÑONES ALEJANDRO, J.**                                                    **OCTOBER 16, 2020**

Plaintiff Ernest Nadab, a prisoner currently incarcerated at SCI-Phoenix, brings this *pro se* civil rights action alleging that the destruction of his property during the movement of prisoners from SCI Graterford to SCI Phoenix violated his constitutional rights. He also claims that he was denied medication following the move, and that he has been retaliated against in various respects. Nadab names the following Defendants in their individual and official capacities: (1) Secretary of Corrections John Wetzel; (2) Superintendent of SCI Phoenix Tammy Ferguson; (3) Kenneth Goodman; (4) John Does 1-20; (5) "CO1 Wanamaker"; (6) "Counsel Thomas"; (7) Sgt Gilliam; (8) "A. King PSS"; and (9) Teresa Snyder.[1]

The Court issued an order on August 3, 2020, directing Nadab to either pay the fees to commence this case or file for leave to proceed *in forma pauperis*. (ECF No. 3.) That Order appears to have crossed in the mail with Nadab's payment of the fees and a letter informing the Court that he had paid the fees, which were docketed on August 6 and August 7, respectively. (*See*

---

[1]     Nadab only named Wetzel, Ferguson, Goodman, and "John Does 1-20" in the caption of his Complaint in accordance with Federal Rule of Civil Procedure 10(a). However, he included a "defendant continuation sheet" naming the additional individuals as Defendants. (ECF No. 1 at 14.)

1

ECF No. 4.) After receiving the Court's Order, Nadab submitted a letter and a copy of his Prisoner Trust Fund Account Statement, confirming his payment of the fees. (ECF No. 5 & 6.)

Although Nadab has paid the fees in full, because he is a prisoner, the Court is still obligated to screen his Complaint pursuant to 28 U.S.C. § 1915A. For the following reasons, the Court will dismiss, without prejudice, pursuant to 28 U.S.C. § 1915A(b)(1), Nadab's Complaint for failure to state a claim, and will allow the amendment of certain claims.

## I.     FACTUAL ALLEGATIONS[2]

Nadab was previously incarcerated at SCI Graterford. Because that prison was closing in July of 2018, inmates and their property were relocated to SCI Phoenix by members of a Corrections Emergency Response Team ("CERT"), that allegedly included Defendant Goodman and the John Doe Defendants. (ECF No. 2 at 3-4.)[3] Nadab alleges that CERT officers "willfully and maliciously destroyed and defaced personal property belonging to [him] with nazi and white supremacist [insignia], and racially themed epithets scribbled on his documents and photographs. (e.g. swastikas and racial epithets)." (*Id.* at 4.) Certain of Nadab's property, including an electric razor and legal documents, were lost during the move. (*Id.*; *see also id.* at 15.) In a grievance he filed about the loss of his property, Nadab indicated that he would be unable to timely file an unspecified pleading without the lost legal documents. (*Id.* at 16.)

Nadab alleges that Defendant Wetzel ordered the transfer of prisoners from SCI Grateford to SCI Phoenix, and that the Defendants — presumably Wetzel and Ferguson — "failed to train and supervise" the "subordinate corrections officers" who carried out the move. (*Id.* at 4.) Nadab also alleges that members of CERT had tattoos espousing white supremacy, and that the population

---

[2]    The following allegations are taken from the Complaint and documents attached to the Complaint.

[3]    The Court adopts the pagination supplied by the CM/ECF docketing system.

of inmates at SCI Graterford was predominately African American and Latino. (*Id.* at 5.) He claims more than 600 "similarly situated inmates" filed claims for property that was lost or destroyed during the move. (*Id.* at 6.)

Nadab also alleges that he suffers from severe anxiety and depression that causes him to experience suicidal tendencies, and that he was denied his medication for eleven days after the move to SCI Phoenix. (*Id.* at 4.) Nadab filed complaints regarding the denial of his medication and "abusive treatment inflicted on him by most of the named Defendants." (*Id.* at 6.) He contends that he was retaliated against in various respects as follows:

- Nadab alleges that he "complained about his mistreatment to the proper prison officials", and that Defendant King, an institutional counselor, retaliated against him by "filing a report of misconduct against him for complaining of mistreatment by SCI Phoenix staff"[4] (*id.* at 4);

- Nadab alleges that Defendants Gilliam,[5] Wanamaker and Thomas "retaliated against [him] by openly discussing his case information with other staff members within earshot of inmates, thereby putting [his] life and safety at risk" because thereafter, Nadab "received threats against his person" from other inmates, who referred to him as a rapist and child molester, "as late as 10/16/2018" (*id.*; *see also id.* at 25-26 & 28);

- Nadab alleges that on September 4, 2019, Defendant Snyder retaliated against him by informing Nadab's cellmate that sharing a cell with Nadab placed him "in physical danger" (*id.* at 4; *see also id.* at 33);

- Nadab alleges that Defendant Snyder retaliated against him for filing a complaint with Lieutenant Governor Fetterman, apparently on October 4, 2019, "by having [Nadab] strip searched, cavity searched and kept handcuffed for 7 hours" (*id.* at 4; *see also id*. at 42).[6] However, in another portion of the Complaint, Nadab indicates that he was subjected to a strip and cavity search because he "complain[ed] to prison authorities." (*Id.* at 5.)

---

[4] It is unclear whether the "mistreatment" to which Nadab refers concerns treatment of his property, the denial of his medication, both, or something else.

[5] This Defendant is identified as "Gillian" in the related grievance.

[6] Documents attached to the Complaint reflect Nadab's allegations that Snyder yelled at him and/or spoke to him disrespectfully on other occasions as well, and his belief that Snyder was out to get him. (ECF No. 1 at 33-39.)

3

Nadab's Complaint is, however, somewhat inconsistent and unclear about the time frame in which he claims to have been subjected to retaliation. He attached grievances he filed and responses to those grievances as exhibits to his Complaint, which reflect that he pursued grievances about various issues from April 23, 2019 through October of 2019. (*Id.* at 15-42.) Based on those allegations, Nadab brings claims pursuant to 42 U.S.C. § 1983 for violations of his Fourth, Eighth and Fourteenth Amendment rights.[7] (*Id.* at 3.) The Court also understands Nadab to be bringing retaliation claims under the First Amendment, and that he may have intended to bring a claim for denial of access to the courts, also under the First Amendment. *See Holley v. Dep't of Veteran Affairs*, 165 F.3d 244, 248 (3d Cir. 1999) ("We apply the applicable law, irrespective of whether a *pro se* litigant has mentioned it by name."). Nadab indicates that the events giving rise to his claims took place between July 11, 2018 and October 4, 2019. (ECF No. 1 at 5.) Nadab seeks compensatory and punitive damages. (ECF No. 1 at 7.)

## II.     STANDARD OF REVIEW

Section 1915A requires that the Court "review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). In doing so, the Court must dismiss a complaint or any portion thereof that "is frivolous, malicious, or fails to state a claim upon which relief may be granted." *Id*. § 1915A(b)(1). Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999) which, in turn, requires the Court to determine

---

[7] To the extent Nadab cited other statutes in his Complaint, the Court cannot discern any legal basis for a claim under the cited provisions. Accordingly, the Court will focus its analysis on Nadab's § 1983 claims.

4

whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). Conclusory allegations do not suffice. *Id.* As Nadab is proceeding *pro se*, the Court construes his allegations liberally. *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

### III. DISCUSSION

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and/or laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). For the following reasons, Nadab's Complaint fails to state a claim.

#### A. Official Capacity Claims

The Complaint reflects that Nadab is suing the Defendants, all of whom are employees of the Pennsylvania Department of Corrections, in their official and individual capacities. The Eleventh Amendment bars suits against a State and its agencies in federal court that seek monetary damages. *See Pennhurst State Sch. And Hosp. v. Halderman*, 465 U.S. 89, 99-100 (1984); *A.W. v. Jersey City Public Schs.*, 341 F.3d 234, 238 (3d Cir. 2003). "Because the Commonwealth of Pennsylvania's Department of Corrections is a part of the executive department of the Commonwealth, it shares in the Commonwealth's Eleventh Amendment immunity." *Lavia v. Pa. Dep't of Corr.*, 224 F.3d 190, 195 (3d Cir. 2000). Suits against state officials acting in their official capacities are really suits against the employing government agency, and as such, are also barred by the Eleventh Amendment. *A.W.*, 341 F.3d at 238; *see also Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70-71 (1989). As the Commonwealth has not waived its Eleventh Amendment immunity for lawsuits filed in federal court, *see* 42 Pa. Cons. Stat. § 8521-22, its officials who are sued in their official capacities are immune from suits filed

in federal court. Accordingly, the Court will dismiss Nadab's official capacity claims against the Defendants, with prejudice, because these are essentially claims against the Department of Corrections barred by the Eleventh Amendment. The Court will address Nadab's claims against the Defendants, in their individual capacities, below.

### B. Claims Based on the Loss and Destruction of Nadab's Property

The Court understands Nadab's Complaint to also raise claims under the First, Fourth, Eighth, and Fourteenth Amendment against Defendants Wetzel, Ferguson, Goodman, and John Does 1-20, based on the alleged loss and destruction of his legal and personal property during the movement of inmates from SCI Graterford to SCI Phoenix.[8] For the reasons set forth below, Nadab has not stated a constitutional claim based on those events.

#### 1. Fourth Amendment Claims

The Court understands Nadab's reference to the Fourth Amendment as an attempt to assert a claim based on the seizure, loss, destruction, and defacement of his property. However, he has not stated a plausible claim under the Fourth Amendment because "prisoners have no legitimate expectation of privacy . . . and the Fourth Amendment's prohibition on unreasonable searches [and seizures] does not apply in prison cells." *Hudson v. Palmer*, 468 U.S. 517, 530 (1984); *see Doe v. Delie*, 257 F.3d 309, 316 (3d Cir. 2001) ("The defendants correctly assert that prisoners do not have a Fourth Amendment right to privacy in their cells." (citing *Hudson*, 568 U.S. at 529)); *see also Parrish v. Corrections Emergency Response Team*, Civ. A. No. 18-4871, 2019 WL 1596337, at *3 (E.D. Pa. Apr. 12, 2019) (concluding prisoner plaintiff failed to state claim for violation of Fourth Amendment where plaintiff alleged that CERT members destroyed and defaced personal

---

[8] The allegations against the remaining Defendants are limited to their retaliation against Nadab. However, the Court does not understand the Complaint to be raising claims against those Defendants based on what happened to his property.

property during process of transferring plaintiff from SCI Graterford to SCI Phoenix). Accordingly, Nadab's Fourth Amendment claim is dismissed, with prejudice.

### 2. Eighth Amendment Claims

The destruction of Nadab's personal property and legal documents also does not provide grounds for a claim under the Eighth Amendment. Conditions of confinement violate the Eighth Amendment's prohibition on cruel and unusual punishment if they satisfy two criteria; *to wit*: (1) the conditions "must be, objectively, sufficiently serious" such that a "prison official's act or omission . . . result[s] in the denial of the minimal civilized measure of life's necessities." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (citations and internal quotation marks omitted); and (2) the official responsible for the challenged conditions must exhibit a "sufficiently culpable state of mind," which "[i]n prison-conditions cases . . . is one of deliberate indifference to inmate health or safety." *Id.* The destruction of property does not equate to a sufficiently serious deprivation that would give rise to a claim under the Eighth Amendment. *See Wongus v. Correctional Emergency Response Team*, 389 F. Supp. 3d 294, 301-02 (E.D. Pa. 2019) (holding that plaintiff's allegations "that correctional facility staff violated his Eighth Amendment right to be free from cruel and unusual punishment by defacing his family photo with a swastika," while "repugnant and detrimental to the orderly administration of a prison, and should be cause for serious disciplinary action against the responsible party, if known[,]" did not "rise to the level of an Eighth Amendment violation"); *Payne v. Duncan*, Civ. A. No. 15-1010, 2017 WL 542032, at *9 (M.D. Pa. Feb. 9, 2017) ("Plaintiff's claim for destruction of property under the Eighth Amendment does not constitute a deprivation of life's necessities."), *aff'd*, 692 F. App'x 680 (3d Cir. 2017). Accordingly, Nadab's Eighth Amendment claims are dismissed, with prejudice.

### 3. Fourteenth Amendment Claims

Nadab is also pursuing a Fourteenth Amendment claim based on the loss and/or destruction of his property. However, there is no basis for a Due Process claim because Pennsylvania law provides Nadab with an adequate state remedy for the deprivation of his property. *See Spencer v. Bush*, 543 F. App'x 209, 213 (3d Cir. 2013) ("'[A]n unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post-deprivation remedy for the loss is available.'" (quoting *Hudson*, 468 U.S. at 533); *Shakur v. Coelho*, 421 F. App'x 132, 135 (3d Cir. 2011) (*per curiam*) (explaining that the Pennsylvania Tort Claims Act provides an adequate remedy for a willful deprivation of property). As Nadab cannot state a plausible basis for a Due Process claim based on the destruction of his property, this claim is dismissed, with prejudice.[9] *See Hernandez v. Corr. Emergency Response Team*, 771 F. App'x 143, 145 (3d Cir. 2019) (*per curiam*) ("Even if the prison grievance procedures could be considered constitutionally inadequate, Pennsylvania's state tort law would provide an adequate remedy.").

Nadab also appears to be raise a race-based Equal Protection claim under the Fourteenth Amendment grounded on his allegations concerning the CERT officers' racist tattoos and the population of the prison. However, nothing in Nadab's Complaint suggests that he was treated differently due to his membership in a protected class. Indeed, prisoners do not constitute a protected class for Fourteenth Amendment purposes, *see Myrie v. Comm'r, N.J. Dep't of Corr.*, 267 F.3d 251, 263 (3d Cir. 2001), and Nadab has not alleged that he was treated differently from others who were similarly situated. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 243 (3d Cir. 2008) (to state an equal protection claim on a "class of one" theory, "a plaintiff must allege that

---

[9] The Complaint does not suggest that Nadab intends to bring claims under state law, but even if he did, he has not alleged an independent basis for jurisdiction over such claims. *See* 28 U.S.C. § 1332.

(1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment"). Rather, the Complaint suggests that CERT officers treated all inmates' property with similar disregard during the transfer and that similarly situated inmates also suffered property loss. Furthermore, the use of racial epithets and offensive imagery, though despicable and indefensible, does not amount to an equal protection violation absent "harassment or some other conduct that deprives the victim of established rights." *Williams v. Bramer*, 180 F.3d 699, 706 (5th Cir. 1999); *Mugavero v. Town of Kearny*, Civ. A. No. 12-2439, 2013 WL 3930120, at *3 (D.N.J. July 30, 2013) ("[L]ike offensive statements, the display or drawing of offensive imagery does not, on its own, amount to a constitutional violation."). Accordingly, Nadab's Equal Protection claims are dismissed.

### 4. First Amendment Access to the Courts Claim

Liberally construing the Complaint, Nadab appears to assert a First Amendment claim based on denial of access to the courts arising from the loss of his legal materials. This claim is not plausible, as alleged in the Complaint. The loss of legal material may constitute a First Amendment claim based on a denial of access to the courts if a prisoner can assert that the loss caused an actual injury. *See Lewis v. Casey*, 518 U.S. 343, 350-53 (1996). In other words, a prisoner claiming that he was denied access to the courts must allege an injury traceable to the conditions of which he complains. *Diaz v. Holder*, 532 F. App'x 61, 63 (3d Cir. 2013) (*per curiam*) (affirming dismissal of denial of access claims where plaintiff failed to tie alleged deficiencies in library to harm in underlying action). In general, an actual injury occurs when a prisoner demonstrates that a "nonfrivolous" and "arguable" claim was lost because of the denial of access to

the courts. *Christopher v. Harbury*, 536 U.S. 403, 415 (2002). "[T]he underlying cause of action, . . . is an element that must be described in the complaint." *Id*.

While Nadab asserts that his legal material was lost, he has not alleged that he suffered an actual injury in the form of a lost nonfrivolous and arguable claim. A grievance attached to his Complaint reflects Nadab's allegation that he would not be able to timely file a certain "pleading" in state court, (*id.* at 16), but he provides no additional information about this alleged lost claim. Accordingly, any access to courts claim is not plausible, as alleged, and is dismissed. *See Presbury v. Wetzel*, 789 F. App'x 294, 295 (3d Cir. 2020) (*per curiam*) (affirming the dismissal of access to courts claim based on the CERT team's loss of plaintiff's legal property where plaintiff "did not allege any facts about the merits of his underlying claim"); *Monroe v. Beard*, 536 F.3d 198, 206 (3d Cir. 2008) (plaintiffs' allegations that "defendants confiscated their legal materials" and that "they lost the opportunity to pursue attacks of their convictions and civil rights claims" without "specify[ing] facts demonstrating that the claims were nonfrivolous" did not state a claim). However, the dismissal of Nadab's First Amendment access to the courts claim is, without prejudice, to amendment.

### 5. Supervisory Liability and Failure to Train

Nadab's claims against Wetzel and Ferguson in their individual capacity appear to be based on their roles as supervisory officials and/or their alleged failure to train subordinate corrections officials. There are "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *reversed on other grounds* by *Taylor v. Barkes*, 575 U.S. 822 (2015). First, a supervisor may be liable if he or she "'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *Id.*

(quoting *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original)). "Second, a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct." *Id.*

Additionally, "[u]nder Section 1983, a supervisor may be liable for [his or her] failure to train or supervise employees. . . ." *Whitfield v. City of Philadelphia*, 587 F. Supp. 2d 657, 666 (E.D. Pa. 2008). A claim for supervisory liability or liability based upon a failure to train involves four elements: (1) that an existing policy created an unreasonable risk of constitutional injury; (2) the supervisor was aware of this unreasonable risk; (3) the supervisor was indifferent to the risk; and (4) the injury resulted from the policy or practice. *See Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989). A supervisor may be held liable where a need for "more or different training . . . is so obvious, and the inadequacy so likely to result in constitutional violations, that the failure to train . . . can fairly be said to represent official policy," and the failure to train "actually causes injury." *City of Canton v. Ohio*, 489 U.S. 378, 390 (1989).

Nadab does not allege that Wetzel or Ferguson maintained, with deliberate indifference, a policy, practice or custom which directly caused constitutional harm, or was personally involved or acquiesced in the destruction of Nadab's legal material and other property. Rather, Nadab asserts in conclusory fashion only that Wetzel and Ferguson failed to train and supervise subordinate corrections officials. Those bare allegations, without further explanation, are insufficient to plausibly allege a basis for liability against Wetzel or Ferguson based on the destruction of inmate property during the move to SCI Phoenix. Accordingly, even if Nadab had alleged a basis for an underlying constitutional violation, which he has not for the reasons set forth above, he still has not stated a plausible basis for a claim against Wetzel or Ferguson.

11

### C. Claims Based on the Denial of Access to Medication

The Court reads Nadab's Complaint to also assert an Eighth Amendment claim for deliberate indifference to his serious medical needs based on his allegation that he did not receive medication for his anxiety and depression for eleven days. To state a claim based on the failure to provide medical treatment, a prisoner must allege facts indicating that prison officials were deliberately indifferent to his serious medical needs. *See Farmer*, 511 U.S. at 835. "A medical need is serious, . . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotations omitted). Deliberate indifference has been found "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). Allegations of medical malpractice and mere disagreement regarding proper medical treatment are insufficient to establish a constitutional violation. *See Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004). Importantly, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs" to be held liable. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *see also Iqbal*, 556 U.S. at 676 (explaining that "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution").

Here, Nadab has not alleged with any specificity how any of the named Defendants were personally involved in, or responsible for, the denial of his medication in the eleven day period following the move to SCI Phoenix. He has also failed to allege any facts from which it could be

plausibly inferred that the Defendants acted with deliberate indifference to his medical needs. Accordingly, Nadab's Eighth Amendment claims for deliberate indifference to his medical needs are dismissed, without prejudice to amendment.

### D. Retaliation Claims

Nadab raises several retaliation claims based on different incidents against Defendants King, Gilliam, Wanamaker, Thomas, and Snyder. In order to state a plausible First Amendment retaliation claim, a prisoner must allege that: (1) he engaged in constitutionally protected conduct; (2) he suffered an adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) the constitutionally protected conduct was "a substantial or motivating factor" for the adverse action. *See Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001); *see also Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003). A prisoner's filing of a grievance constitutes constitutionally protected conduct. *See Watson v. Rozum*, 834 F.3d 417, 422 (3d Cir. 2016). A prisoner's oral grievances are likewise protected. *See Mack v. Warden Loretto FCI*, 839 F.3d 286, 297-98 (3d Cir. 2016). The timing of the allegedly retaliatory behavior relative to the constitutionally protected conduct may establish a causal link between the two for purposes of establishing motivation. *See Watson*, 834 F.3d at 422.

Here, although Nadab appears to have been engaged in constitutionally protected conduct by filing various grievances and complaining about misconduct, the factual contours of his retaliation claims are unclear. Nadab broadly alleges that he complained of "mistreatment" and it is clear from exhibits attached to the Complaint that he grieved various issues over a period of approximately two-and-a-half years. (*Id.* at 4 & 15-42.) He has identified as the basis for his claims four apparently unrelated instances of retaliation by five different Defendants—Defendants

13

King, Gilliam, Wanamaker, Thomas, and Snyder—over a time period from July 2018 through October 4, 2019.

Without further clarification, the Court cannot discern how each instance of alleged retaliation was motivated by Nadab's grievances. That is, it is not clear from the Complaint which grievance or grievances Nadab claims allegedly motivated each instance of retaliation. Furthermore, with respect to Nadab's allegation of a retaliatory strip search, it is unclear whether he is alleging that the strip search was motivated by complaints to prison authorities or a complaint he made to the Lieutenant Governor, or whether he is complaining of two different strip searches. In sum, Nadab has failed to clearly or plausibly state how his engagement in constitutionally protected activity was a substantial or motivating factor in the Defendants' treatment of him on the occasions in question. Nadab's claims are, therefore, dismissed, without prejudice to amendment, so that he can clarify the bases for these claims.[10]

## IV.    CONCLUSION

For the foregoing reasons, Nadab's Complaint is dismissed for failure to state a claim, pursuant to 28 U.S.C. § 1915A(b)(1). The Court concludes that amendment of Nadab's official capacity claims, and his Fourth, Eighth, and Fourteenth Amendment claims based on the loss or destruction of his property would be futile, so those claims are dismissed with prejudice. However, the Court will permit Nadab to amend the following claims, as it is possible that he could allege facts sufficient to cure them: (1) his First Amendment claims based on the loss and/or destruction

---

[10] Nadab clearly couches his claims against Defendants Wanamaker, Thomas, Gilliam, King, and Snyder in terms of retaliation. If he intended to bring other claims against these Defendants based on their underlying conduct, however, that is not clear from the Complaint as currently drafted. In any event, the allegations of the Complaint provide little factual detail about the events in question—such as the misconduct, strip search, cavity search, and threats he received from other inmates—from which the Court could conclude that these claims are plausible. Nadab may clarify these issues in his amended complaint, if he chooses to file one.

of his legal property; (2) his Eighth Amendment claims for deliberate indifference to his serious medical needs; and (3) his retaliation claims. An Order follows, which provides further instruction about amendment.

*NITZA I. QUIÑONES ALEJANDRO*
*Judge, United States District Court*